**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re MultiPlan Health Insurance Provider Litigation*<br><br>*This Document Relates to:*<br>**Jefferson Health Corp.**, and all related entities listed in Exhibit A,<br><br>Plaintiffs,<br><br>v.<br><br>MULTIPLAN CORP. NKA CLARITEV CORPORATION; MULTIPLAN, INC.; VIANT, INC.; VIANT PAYMENT SYSTEMS, INC.; NATIONAL CARE NETWORK, LP; NATIONAL CARE NETWORK, LLC; MEDICAL AUDIT & REVIEW SOLUTIONS, INC.; AETNA, INC.; THE CIGNA GROUP; UNITEDHEALTH GROUP, INC.; UNITED MEDICAL RESOURCES INC; ELEVANCE HEALTH, INC. F/K/A/ ANTHEM, INC.; ANTHEM BLUE CROSS, INC. F/K/A EMPIRE BLUE CROSS.; et al.,<br><br>Defendants. | Civil Action No.: 1:24-cv-06795<br><br>MDL No. 3121<br><br>DIRECT FILED COMPLAINT PURSUANT TO MDL CASE MANAGEMENT ORDERS 6, 7 (AS AMENDED) |

**DIRECT ACTION PLAINTIFF SHORT-FORM COMPLAINT**
**OF JEFFERSON HEALTH CORP. AND RELATED ENTITIES**

Plaintiff, **Jefferson Health Corp.** ("Jefferson Health"), itself and on behalf of the entities in Exhibit A, (collectively, "Jefferson Plaintiffs" or "Plaintiffs") file this Short-Form Complaint and Demand for Jury Trial against the Defendants named below by and through the undersigned counsel. Plaintiffs incorporate by reference the factual allegations, as well as the claims and relief checked below, sought in the Consolidated Master Direct Action Plaintiff Complaint ("Consolidated Master DAP Complaint") as it relates to the named Defendants (checked below), filed in *In re Multiplan Health Insurance Provider Litigation*, MDL No. 3121, in the United States District Court for the Northern District of Illinois.

Plaintiffs file this Short-Form Complaint pursuant to Case Management Order No. 6, filed on the MDL Docket (No. 1:24-cv-06795) at ECF 179, and Amended Case Management Order No. 7, filed on the MDL Docket (No. 1:24-cv-06795) at ECF 503.

## IDENTIFICATION OF PARTIES

### A. PLAINTIFFS

1. Name of the Plaintiffs alleging claims against Defendant(s):

**Jefferson Health Corp.** itself and on behalf of the entities named in Exhibit A.

2. For each Plaintiff that is a corporation, list the state of incorporation and state of principal place of business. For each Plaintiff that is an LLC or partnership, list the state citizenship of each of its members. For each Plaintiff that is a natural person, list the state of residency and citizenship at the time of the filing of this Short-Form Complaint [Indicate State[s]]:

**Jefferson Health Corp.**

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

**See also Exhibit A.**

### B. DEFENDANTS

3. Plaintiffs name the following Defendants[1] in this action [*Check all that apply*]:

| | |
|---|---|
| x | MultiPlan, Inc. |
| x | Aetna, Inc. |
| x | Blue Shield of California Life & Health Insurance Company |
| x | Blue Cross Blue Shield of Michigan Mutual Insurance Company |
| x | Aware Integrated, Inc. and BCBSM, Inc. d/b/a Blue Cross Blue Shield Of Minnesota |
| x | Cambia Health Solutions, Inc. f/k/a The Regence Group |
| x | Centene Corporation |

[1] Each Defendant named in this Short-Form Complaint includes each of that entity's executives, employees, directors, and majority-owned subsidiaries. For example, UnitedHealth Group Inc. includes, among others, the following majority-owned subsidiaries: United Healthcare Insurance Company, and its affiliates; United Healthcare Services Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

| | |
|---|---|
| x | The Cigna Group |
| x | Elevance Health, Inc. f/k/a Anthem, Inc. |
| x | Health Care Service Corporation |
| x | Highmark Health |
| x | Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey |
| x | Humana Inc. |
| x | Kaiser Foundation Health Plan, Inc. |
| x | Molina Healthcare, Inc. |
| x | UnitedHealth Group Inc. |
| x | Allied National, LLC |
| x | Benefit Plans Administrators of Eau Claire, LLC |
| x | Central States Southeast and Southwest Areas Health and Welfare Fund |
| x | Consociate, Inc. d/b/a Consociate Health |
| x | Healthcare Highways Health Plan (ASO), LLC |
| x | Secure Health Plans of Georgia, LLC D/B/A Secure Health |
| x | Sanford Health Plan |
| x | CareFirst Of Maryland |
| x | Blue Cross Blue Shield of Massachusetts |

## C. OTHER DEFENDANTS

For each "Other Defendant" Plaintiffs contend are additional parties and are liable or responsible for Plaintiffs' damages alleged herein, Plaintiffs must identify by name each Defendant and its citizenship, and Plaintiffs must plead the specific facts supporting any claim against each "Other Defendant" in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiffs may attach additional pages to this Short-Form Complaint.

The following Defendants have already been named and answered the Consolidated Master DAP Complaint. Plaintiffs name them here for completeness.

| Name | Citizenship |
|---|---|
| Multiplan Corp. NKA Claritev Corporation | New York |
| Viant, Inc. | Illinois |
| Viant Payment Systems, Inc. | Illinois |
| National Care Network, LP | Texas |

| | |
|---|---|
| National Care Network, LLC | Texas |
| Medical Audit & Review Solutions, Inc. | Texas |

Plaintiffs expect discovery to reveal further information about the identity and role of additional Co-Conspirators in the MultiPlan Cartel. Plaintiffs reserve the right to amend their Complaint or join additional Defendants.

## DESIGNATED FORUM

4. For Direct Filed Cases: Identify the Federal District Court in which the Plaintiffs would have filed in the absence of direct filing: **Northern District of Illinois**.

5. For Transferred Cases: Identify the Federal District Court in which the Plaintiffs originally filed and the date of filing: **N/A**

## JURISDICTION AND VENUE

6. Subject Matter Jurisdiction is based on:

| | |
|---|---|
| | Diversity of Citizenship |
| X | Federal Question |
| X | Other (The basis of any additional grounds for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):<br><br>Supplemental Jurisdiction (28 U.S.C. § 1367).<br><br>Plaintiffs attach Exhibit B in support of the propriety of venue in the Northern District of Illinois and the Court's jurisdiction over the instant claims. |

## FACTS AND INJURIES ASSERTED

7. Plaintiffs adopt all paragraphs of the Consolidated Master DAP Complaint by reference, except for the allegations set forth in any cause of action that Plaintiffs do not adopt (as indicated below).

8. Plaintiffs adopt and allege as injuries resulting from the challenged conduct the injuries to DAPs set forth in the Consolidated Master DAP Complaint.

9. Plaintiffs attach Exhibit C describing additional antitrust injuries suffered as a result of Defendants' conspiracy and Exhibit D describing facts and allegations supporting Plaintiffs' unjust enrichment claims under Pennsylvania and New Jersey common law.

**ADDITIONAL FACTS DEMONSTRATING STANDING TO BRING CAUSES OF ACTION**

10. Plaintiffs allege the following additional facts in support of their standing to bring causes of action:

| |
|---|
| Plaintiffs attach Exhibit C in further support of their standing to bring the asserted causes of action. |

**CAUSES OF ACTION ASSERTED**

11. Plaintiffs adopt and assert the following Causes of Action alleged in the Consolidated Master DAP Complaint, and the allegations with regard thereto, against the Defendants identified above (*check all that are adopted*).

| Check all that apply | Count | Cause of Action | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|---|
| x | I | Horizontal Agreements in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| x | II | Hub-And-Spoke Agreement in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| x | III | Principal-Agent Combinations in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| x | IV | Agreements to Unreasonably Restrain Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| x | V | Anticompetitive Information Exchange (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| x | VI | Violation of State and D.C. Antitrust Statutes | State Law |
| x | VII | Violation of State Consumer Protection Laws | State Law |
| x | VIII | Unjust Enrichment | State Common Law |

**NOTE**

If Plaintiffs want to allege additional Causes of Action other than those selected in the preceding paragraph, which are the Causes of Action set forth in the Master Complaint, the facts supporting those additional Causes of Action, must be pled in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiffs may attach additional pages to this Short-Form Complaint.

## ADDITIONAL CAUSES OF ACTION

12. Plaintiffs assert the following additional Causes of Action and supporting allegations against the following Defendants:

| Cause of Action | Asserted Against | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|
| Unjust Enrichment under Pennsylvania Common Law | All Defendants named in this Short-Form Complaint | Pennsylvania Common Law; see Exhibit D |
| Unjust Enrichment under New Jersey Common Law | All Defendants named in this Short-Form Complaint | New Jersey Common Law; see Exhibit D |

## PRAYER FOR RELIEF

13. Check all that apply:

| | |
|---|---|
| x | **WHEREFORE,** Plaintiffs pray for all available compensatory damages, treble damages, punitive damages in amounts to be proven at trial, and judgment against Defendants and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiffs may be entitled, including disgorgement. |
| x | **WHEREFORE,** Plaintiffs pray for declaratory and injunctive relief and judgment against Defendants and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiffs may be entitled. |

## JURY DEMAND

| | |
|---|---|
| x | Plaintiffs hereby demand a trial by jury as to all claims in this action. |
| | Plaintiffs **do not demand** a trial by jury as to all claims in this action. |

****

By signature below, Plaintiffs' counsel hereby confirms their submission to the authority and jurisdiction of the United States District Court of the Northern District of Illinois and oversight of counsel's duties under Federal Rule of Civil Procedure 11, including enforcement as necessary through sanctions and/or revocation of pro hac vice status.

Date: July 10, 2026

**DUANE MORRIS LLP**

/s/ *Sean S. Zabaneh*
Sean S. Zabaneh
Sean P. McConnell
Sarah O'Laughlin Kulik
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
P: 215 979 1149
SSZabaneh@duanemorris.com
SPMcconnell@duanemorris.com
SCKulik@duanemorris.com

and

Rebecca Bazan
DUANE MORRIS LLP
Washington, D.C. 20001
P: 202 766 7800
REBazan@duanemorris.com

and

John D. Cooke
DUANE MORRIS LLP
Chicago, IL
P: 312 499 6700
JDCooke@duanemorris.com
Attorney ID: 6354591

***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on July 10, 2026, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

Date: July 10, 2026

**DUANE MORRIS LLP**

/s/ *Sean S. Zabaneh*

Sean S. Zabaneh
Sean P. McConnell
Sarah O'Laughlin Kulik
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
P: 215 979 1149
SSZabaneh@duanemorris.com
SPMcconnell@duanemorris.com
SCKulik@duanemorris.com

and

Rebecca Bazan
DUANE MORRIS LLP
Washington, D.C. 20001
P: 202 766 7800
REBazan@duanemorris.com

and

John D. Cooke
DUANE MORRIS LLP
Chicago, IL
P: 312 499 6700
JDCooke@duanemorris.com
Attorney ID: 6354591

***Counsel for Plaintiffs***

**Exhibit A**

Abington Memorial Hospital DBA Jefferson Abington Hospital
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Abington Surgical Center, LP
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Abington Surgical Services GP, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Accountable Care Organization of Pennsylvania, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Albert Einstein Healthcare Network
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Albert Einstein Medical Center DBA Jefferson Einstein Philadelphia Hospital
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Ambulnz NJ-PA, LLC
- State of Incorporation: Delaware
- Principal Place of Business: New Jersey

Ambulnz NJ, LLC
- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

Ambulnz PA, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Aria Health Orthopaedics DBA Jefferson Health 3B Orthopaedics
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Aria Health Physician Services
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Cherry Hill Surgery Center, LLC DBA Jefferson Cherry Hill Surgical Center
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Care Partners Alliance LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Care Partners, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Community Health Associates, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Endoscopy Center - Blue Bell
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Medical Center Montgomery DBA Jefferson Einstein Montgomery Hospital
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Einstein Practice Plan, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Emergency Transport Associates, Inc. DBA JeffSTAT
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Fresenius Medical Care Voorhees, LLC
- State of Incorporation: Delaware
- Principal Place of Business: Pennsylvania

Fornance Physician Services, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Health Care Services, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

JeffCARE Alliance, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

JeffCARE, Inc.

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Acute Care Physicians, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Ambulatory Surgery Services, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Health Corporation F/K/A Albert Einstein Healthcare Network

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Health - Northeast

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Health New Jersey Direct Primary Care, P.C.

- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

Jefferson University Physicians of New Jersey, P.C.

- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

Jefferson Lehigh Urgent Care LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Medical Care, P.C.

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Medical Group

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson New Jersey
- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

Jefferson Population Health Services Organization LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson-Solis Mammography Services, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson University Radiology Associates, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson University Physicians
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Jefferson Value-Based Holding Company LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

JeffHome NJ, LLC
- State of Incorporation: Delaware
- Principal Place of Business: Delaware

JeffHome PA, LLC
- State of Incorporation: Delaware
- Principal Place of Business: Delaware

JeffHome PA-NJ, LLC DBA Jefferson Health at HOME by BAYADA
- State of Incorporation: Delaware
- Principal Place of Business: Delaware

Kennedy Medical Group Practice, P.C.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Kennedy University Hospital, Inc. DBA Jefferson Health - New Jersey
- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

KHS Ambulatory Surgery Center, LLC

- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

Lansdale Hospital [Corporation] DBA Jefferson Lansdale Hospital

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Network Accountable Care Organization, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Methodist Associates in Healthcare, Inc. DBA Jefferson Community Physicians

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Network Physicians of New Jersey, P.C.

- State of Incorporation: Pennsylvania
- Principal Place of Business: New Jersey

New Britain Surgery Center, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

PGC Endoscopy Center for Excellence, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Physicians Care General, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Physicians Care Surgical Hospital, LP

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Riverview Surgery Center at the Navy Yard General Partner, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Rothman Orthopaedic Specialty Hospital, LLC

- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

The Magee Memorial Hospital for Convalescents
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Thomas Jefferson University Hospital, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Thomas Jefferson University Hospitals, Inc. DBA Thomas Jefferson University Hospital
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Walnut Home Therapeutics, Inc. DBA Jefferson Specialty Pharmacy
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Hazleton Health & Wellness Center
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital – Hazleton
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital – Schuylkill
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Network Accountable Care Organization, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital – Pocono
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Network Emergency Medical Services
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Services, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

CHP-LVHN JV, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

UHS-LVHN JV, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Network Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Network Accountable Care Organization, LLC.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Group
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

LVPG - Tower Place
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Services, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Populytics Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Spectrum Health Ventures, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician-Hospital Organization, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Health Network Laboratories, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital - Hazleton
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Hazleton Health & Wellness Center
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Hazleton Professional Services DBA Lehigh Valley Physician Group-Hazleton
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital - Pocono
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Family Care Centers, Inc. DBA Lehigh Valley Physician Group - Pocono
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Pocono VNA-Hospice
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Health Network Emergency Medical Services DBA LVHN EMS
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Pocono Ambulatory Surgery Center, LTD
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Hospital - Schuylkill
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Schuylkill Health System Medical Group, Inc. DBA Lehigh Valley Physician Group - Schuylkill
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Schuylkill Health System Medical Mall, LP
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

AllSpire Health Partners. LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Imaging LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Fairgrounds Medical Center
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

LVHC Associates
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Kutztown Professional Center Associates
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Quakertown Health Ventures, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Secure Healthcare Information Management, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Grand View-Lehigh Valley Health Services DBA Buxmont Cardiology Associates
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Eastern Pennsylvania Endoscopy Center LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Nazareth Endoscopy Center LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Monroe Endoscopy Center LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

CHP-LVHN JV LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

UHS-LVHN JV LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Carbon Schuylkill Endoscopy Center Inc
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Hazleton Surgery Center, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Pottsville PA Endoscopy ASC LP DBA Schuylkill Endoscopy Center
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Group – Hazleton
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Group
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Group – Pocono
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Group – Schuylkill
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

LVHN Coordinated Professional Practice
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

LVHN Coordinated Professional Practice of NJ PC
- State of Incorporation: New Jersey
- Principal Place of Business: New Jersey

LVHN Scranton Orthopedic Specialists
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

LVPG – Tower Place
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Hazleton Surgery Center, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

The Pottsville PA Endoscopy ASC, LP
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Schuylkill Medical Plaza, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Schuylkill Health System Medical Mall Limited Partnership
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Pocono Ambulatory Surgery Center, Limited
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Eastern Pennsylvania Endoscopy Center, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Nazareth Endoscopy Center, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Monroe Endoscopy Center, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Health Network Laboratories, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Imaging, LLC
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Lehigh Valley Physician Hospital Organization, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Grand View – Lehigh Valley Health Services
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Fairgrounds Medical Center Associates
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Kutztown Professional Center Associates
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

Carbon-Schuylkill Endoscopy Center, Inc.
- State of Incorporation: Pennsylvania
- Principal Place of Business: Pennsylvania

**Exhibit B**

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337(a) because Plaintiffs bring their claims under §§ 4 and 16 of the Clayton Act (15 U.S.C. § 15, 26), to recover treble damages and costs of suit, including reasonable attorneys' fees, and injunctive relief against the Defendants for the harm caused by Defendants' violations of § 1 of the Sherman Act (15 U.S.C. § 1). The Court has supplemental jurisdiction over Plaintiffs' state law claims, including the Pennsylvania and New Jersey unjust enrichment claims and Illinois state antitrust law claims, under 28 U.S.C. § 1367 because those claims are so related to the federal claims as to form part of the same case or controversy.

2. This Court has personal jurisdiction over MultiPlan because MultiPlan has substantial operations in Naperville, Illinois, including employees there who are involved in operating MultiPlan's common pricing methodology for out-of-network services. Acts and omissions alleged herein occurred at MultiPlan's office in Naperville, Illinois. Further, Multiplan operates nationally, transacting business throughout the United States, including in this District (including repricing claims for out-of-network healthcare services at facilities in this District), and is engaging in the alleged antitrust conspiracy, which has a direct, foreseeable, and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.

3. This Court has personal jurisdiction over the other named Defendants because each of them—in furtherance of their conspiracy to fix prices—paid compensation to MultiPlan and provided data to MultiPlan at its office in Naperville, Illinois and participated in an antitrust conspiracy, which has a direct, foreseeable, and intended effect of causing injury to the business and property of persons and entities residing in, located in, or doing business throughout the United States, including in the state of Illinois.

4. Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and under the federal venue statute, 28 U.S.C. § 1391, because all Defendants have transacted business within the District by virtue of their relationship with MultiPlan and a substantial portion of the unlawful acts giving rise to this action occurred in this District.

# Exhibit C

## ADDITIONAL FACTUAL ALLEGATIONS: ANTITRUST INJURY AND STANDING

### I. The Jefferson Plaintiffs Have Been Underpaid for Out-of-Network Services as a Result of Defendants' Violations of the Antitrust Laws

1. Jefferson Health is a Pennsylvania nonprofit health system with its headquarters in Philadelphia, Pennsylvania. The entities identified on Exhibit A are subsidiaries, affiliates, and entities over which Jefferson Health has ownership or control, or through which Jefferson Health otherwise has the right to pursue claims in this litigation.

2. Jefferson Health's operations date back to 1825, and it is currently operating more than 30 hospitals and many other healthcare facilities in Pennsylvania and New Jersey. Jefferson Health's mission is "to improve lives."

3. The Jefferson Plaintiffs have provided medically necessary out-of-network goods and services to certain members of Defendants and other health insurance companies, and the Jefferson Plaintiffs have billed for those out-of-network goods and services. The Jefferson Plaintiffs have been paid less for those out-of-network goods and services than they would have been paid but for Defendants' anticompetitive conduct, and the Jefferson Plaintiffs have been injured as a result of Defendants' violations of the antitrust laws as set forth in the Consolidated Master DAP Complaint.

### II. The MultiPlan Cartel's Artificially Depressed Prices Contaminated Industry-Wide Pricing

#### A. The Cartel Introduced Skewed Data to FAIR Health and Other Central Benchmark Databases

4. The anticompetitive effects of the MultiPlan Cartel extend beyond the artificially reduced prices paid by the approximately 700 payors that directly participate in the conspiracy. These artificially suppressed out-of-network reimbursement rates have contaminated central data repositories—including, for example, FAIR Health, Inc. ("FAIR Health")—that non-participating insurers rely on to determine out-of-network reimbursement levels. As a result, Defendants' price-fixing conspiracy has depressed out-

of-network reimbursement rates paid to healthcare providers by all insurers, not merely those that directly use MultiPlan's pricing methodology.

5. There are roughly 1,100 insurance companies operating in the United States. Approximately 400 of those insurance companies may not use MultiPlan and instead use other means to determine the amounts they will pay healthcare providers for out-of-network goods and services. Some insurance companies use Usual, Customary, and Reasonable ("UCR") rates, which are typically between the 50th and 80th percentile of local charges for a particular service. Insurance companies that still use this benchmarking system typically calculate UCR rates using charge and payment data compiled by the independent non-profit organization FAIR Health.

6. FAIR Health was created in 2009 to collect, verify, and maintain insurers' claims data and to calculate fair, transparent, and accurate UCR benchmarks for use by healthcare providers and insurers. FAIR Health was designed to replace the manipulated Ingenix database and to produce benchmarks that accurately reflected prevailing market rates.

7. The data that populates FAIR Health's database and forms the basis of UCR benchmarks is derived from claims data submitted by insurers—including many members of the MultiPlan Cartel. Under the original consent decrees instituted following the New York Attorney General's investigation of Ingenix, settling insurers were required to submit accurate, un-scrubbed charge data to FAIR Health. However, once the MultiPlan Cartel began systematically suppressing out-of-network reimbursement rates starting in approximately 2015, the claims data flowing from cartel members into FAIR Health's database increasingly reflected the artificially depressed payment levels generated by the cartel's elimination of competition.

8. The mechanism by which the MultiPlan Cartel contaminates FAIR Health and similar UCR databases is straightforward. Cartel members representing over 80% of all out-of-network payments by dollar volume in the United States use MultiPlan's common pricing methodology to set out-of-network

reimbursement amounts at levels far below pre-cartel market rates. Those artificially suppressed payment amounts are then reported to FAIR Health and other data aggregators as part of the ordinary course of claims data submission. Because FAIR Health's UCR benchmarks are derived from the universe of reported claims data, the cartel's suppressed payment levels systematically pull down the benchmark rates calculated using FAIR Health's data.

9. As the vast majority of claims data submitted to FAIR Health and similar data aggregators now reflects the artificially depressed reimbursement rates generated by the MultiPlan Cartel, the UCR benchmarks produced by those aggregators have been dragged downward. Insurers that do not directly participate in the MultiPlan Cartel but rely on FAIR Health's UCR benchmarks to determine their out-of-network reimbursement rates therefore set those rates at artificially depressed levels—not because of natural market forces, but because the underlying benchmark data has been tainted by the cartel's coordinated price suppression.

**B. The Cartel's Dominant Market Share Ensures Market-Wide Impact**

10. The MultiPlan Cartel's dominant market position ensures that its artificially depressed prices affect the entire market for out-of-network goods and services, not merely transactions directly processed through MultiPlan. MultiPlan and its co-conspirators control approximately 80–90% of the national market for out-of-network reimbursement by dollar volume.

11. Coordinated price suppression in over 80% of a relevant market necessarily depresses average prices in that market. When the dominant group of insurers in a market collectively suppresses prices through coordinated conduct, the remaining non-participating insurers face distorted pricing conditions and respond like any rational, profit-maximizing firm by adjusting their reimbursement levels accordingly—whether by reference to contaminated benchmark data or other indicators of the new market equilibrium.

12. The cartel's activity has predictably affected overall market prices. Since cartel members abandoned FAIR Health and adopted MultiPlan's pricing methodology, reimbursement rates have decreased year-over-year. Prior to 2016, reimbursement rates typically rose over time, reflecting inflation and the increased costs of providing care.

### C. Effective Cartels Necessarily Affect Non-Participants' Pricing

13. As the court explained in *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6246736, at *6 (N.D. Cal. Oct. 26, 2016), "Successful cartels increase the market price for a price-fixed good, not just their own price (lest consumers subvert the conspiracy by purchasing from lower-priced competitors instead). The injuries that result from conspirators' impact on the market are directly caused by their collusive conduct regardless of the supplier that sells the good."

14. A robust body of economic scholarship establishes that when a cartel exercises market power, non-conspiring competitors' pricing is necessarily affected. This is due, in part, to the fact that "[a] firm in the competitive fringe does not engage in strategic behavior. Instead, it accepts the prevailing price as an economic parameter beyond its influence." Roger D. Blair and Virginia G. Maurer, *Umbrella Pricing and Antitrust Standing: An Economic Analysis*, No. 4 Utah Law Review (1982). In short, the small insurers operating outside of the cartel simply use the prevailing price set by the cartel as their new benchmark.

## III. Plaintiffs Were Injured by Non-Participating Insurers' Artificially Depressed Reimbursements

15. DAPs submitted claims for out-of-network goods and services not only to members of the MultiPlan Cartel but also to insurers that did not directly participate in the cartel's pricing methodology. Those non-participating insurers set their out-of-network reimbursement rates as any rational market participant would: by reference to the price the market will bear. Insurers that did not participate in the cartel may have arrived at these prices by consulting FAIR Health UCR benchmarks, proprietary databases that incorporated the cartel's tainted payment data, or other information. Regardless of how these market

participants discovered market prices or gathered competitive intelligence, the result was the same: the prices they found were contaminated by the cartel's coordinated price suppression.

16. As a direct, foreseeable, and proximate result of the MultiPlan Cartel's price-fixing, DAPs received artificially depressed reimbursement rates from all insurers operating in a market marred by collusion. These depressed rates were not the product of competitive market forces or independent decisions by competitors operating in a vacuum; they were the product of Defendants' anticompetitive conduct and corruption of the competitive process.

17. DAPs' injuries from non-participating insurers' suppressed reimbursement rates are of the type that the antitrust laws are intended to prevent. When a cartel controlling over 80% of a market systematically suppresses prices, the resulting market-wide depression in reimbursement levels is a direct and intended consequence of the conspiracy. As a result of Defendants' conduct, DAPs received significantly lower reimbursements for their out-of-network goods and services than they would have in a competitive market.

**Exhibit D**

## ADDITIONAL FACTUAL ALLEGATIONS:

## UNJUST ENRICHMENT UNDER PENNSYLVANIA AND NEW JERSEY LAW

### I. Pennsylvania Law and New Jersey Law Apply to Plaintiffs' Unjust Enrichment Claims

1. Jefferson Health is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. Jefferson Health files this action itself and on behalf of the related Plaintiffs identified in Exhibit A, many of which are also Pennsylvania entities with principal places of business in Pennsylvania. Nine of Jefferson Health's affiliated entities are incorporated in New Jersey with principal places of business in New Jersey.

2. The Pennsylvania-based Plaintiffs provided out-of-network goods and services through Pennsylvania-based healthcare operations and suffered economic loss from Defendants' underpayments in Pennsylvania. The restitutionary injury is therefore centered in Pennsylvania because the benefit Defendants retained corresponds to amounts that should have been paid to Pennsylvania-based Plaintiffs for healthcare services they furnished in Pennsylvania.

3. Plaintiffs' New Jersey-based entities provided out-of-network goods and services through New Jersey-based healthcare operations and suffered economic loss from Defendants' underpayments in New Jersey. For these entities, the restitutionary injury is centered in New Jersey because the benefit Defendants retained corresponds to amounts that should have been paid to New Jersey-based Plaintiffs for healthcare services they furnished in New Jersey.

4. To the extent required, Plaintiffs plead these unjust enrichment claims under Pennsylvania law and New Jersey law, respectively, in the alternative to their other claims and remedies, and seek restitution or disgorgement only to the extent such relief is not duplicative of any legal damages awarded.

## II. Elements of Unjust Enrichment

### A. Pennsylvania Law Requires a Conferred Benefit, Appreciation of the Benefit, and Inequitable Retention

5. Unjust enrichment under Pennsylvania law is a quasi-contractual doctrine based in equity.

6. To prove unjust enrichment under Pennsylvania law, Plaintiffs must establish that: (1) Plaintiffs conferred benefits on Defendants; (2) Defendants appreciated those benefits; and (3) Defendants accepted and retained those benefits under circumstances in which it would be inequitable for Defendants to retain the benefit without payment of value.

7. Unjust enrichment commonly arises where a party provides services for which compensation is ordinarily expected. Plaintiffs' healthcare goods and services were provided in commercial healthcare transactions for which payment at a lawful, competitive, and reasonable rate was expected. These were not gratuitous transfers.

8. Pennsylvania law permits equitable relief where legal remedies are inadequate to achieve complete justice, and Plaintiffs plead restitution, disgorgement, and constructive trust remedies in the alternative to their other remedies.

### B. New Jersey Law Requires a Conferred Benefit, an Expectation of Remuneration, and Inequitable Retention

9. Unjust enrichment under New Jersey law is a quasi-contractual doctrine based in equity and has substantively similar elements to unjust enrichment claims under Pennsylvania law.

10. To prove unjust enrichment under New Jersey law, Plaintiffs must establish that: (1) Defendants received a benefit; (2) Plaintiffs expected remuneration from the Defendants and; (3) retention of the benefit by Defendants would be unjust.

11. The law rests on the principle that a person shall not be allowed to enrich himself unfairly at the expense of another. Plaintiffs' healthcare goods and services were provided in commercial healthcare transactions for which payment at a lawful, competitive, and reasonable rate was expected. These were not gratuitous transfers.

12. New Jersey law permits equitable relief where legal remedies are inadequate to achieve complete justice, and Plaintiffs plead restitution, disgorgement, and constructive trust remedies in the alternative to their other remedies.

**C. Plaintiffs Furnished Valuable Goods and Services and Defendants Have Benefited by Paying Below-Market Prices**

13. Defendants were responsible for paying for healthcare goods and services on behalf of their members or other parties who compensated Defendants to serve as payors. Defendants received a benefit because they did not pay reasonable value for the services rendered. Payors directly benefit from below-market pricing because they generally do not pass on savings directly to the insured patient. Instead, the insured plan member generally pays a set premium and does not directly benefit from an underpayment. On the other hand, the payor retains additional funds for its own use or benefit if it can underpay a healthcare provider.

14. Defendants were enriched by retaining the difference between the lawful, competitive, and reasonable value of Plaintiffs' out-of-network goods and services, including the usual, customary, and reasonable price for those services, and the artificially suppressed amounts actually paid. MultiPlan appreciated and used the benefits Plaintiffs conferred because MultiPlan adjudicated and priced out-of-network claims and retained a portion of the underpayments it was able to negotiate, and the Defendants obtained the value of Plaintiffs' services while paying less than would have been paid absent the cartel. Businesses universally appreciate having additional funds on hand.

**D. It Would Be Inequitable to Allow Defendants to Retain Funds at Providers' Expense Due to an Illegal Conspiracy**

15. It would be inequitable for Defendants to retain the value of the underpayments made possible by their illegal collusion. Plaintiffs provided medical goods and services in commercial healthcare transactions and deserve to be paid at lawful, competitive, and reasonable rates.

16. Plaintiffs seek restitution, disgorgement, and/or a constructive trust measured by Defendants' unjust gains, including the value of out-of-network goods and services for which Plaintiffs were not paid a lawful, competitive, reasonable, and customary amount, fees and revenues earned from underpayments, and interest on funds that should have been paid to Plaintiffs.